IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-1749-WJM-SKC

TITAN MANUFACTURING SOLUTIONS, INC., a Nevada corporation,

Plaintiff,

v.

NATIONAL COST, INC., a Florida corporation d/b/a National Tax Group,
LEE FERRY, and
STEPHANIE REYNOSO,

Defendants.

**ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS**

Plaintiff Titan Manufacturing Solutions, Inc. ("Plaintiff"), sues Defendants National Cost, Inc. ("NCI"), Lee Ferry ("Ferry"), and Stephanie Reynoso ("Reynoso") (together, "Defendants") for breach of contract, trade secret misappropriation in violation of the Colorado Uniform Trade Secrets Act ("CUTSA"), Colo. Rev. Stat. §§ 7-74-101 to -110, and related causes of action. Currently before the Court is Defendants' Partial Motion to Dismiss (ECF No. 31), which attacks Plaintiff's claims for conversion and civil conspiracy. For the reasons explained below, the motion is granted with prejudice as to the conversion claims and without prejudice as to the civil conspiracy claim.

**I. LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded

factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

The Court accepts the following allegations as true for purposes of resolving Defendants' motion. All "¶" citations, without more, are to the Verified Complaint (ECF No. 14 at 6–25).

Plaintiff "develops proprietary tax solutions for, among other things, the R&D Tax Credit" (¶ 10), presumably referring to the research and development tax credit available under 26 U.S.C. § 41. "The process [of claiming the R&D Tax Credit] is highly fact-intensive and requires extensive support for qualifying expenses." (¶ 11.) "Among other software solutions, [Plaintiff] developed Titan Armor® ['Armor'], an online, web-based software platform that captures the R&D Tax Credit." (¶ 13.)[1] "[Plaintiff] developed and refined [Armor] based on extensive experience before the Internal

---

[1] In other briefing, Plaintiff states that, "[o]versimplified, Armor is essentially a highly-specialized version of TurboTax® for the R&D Tax Credit." (ECF No. 38 at 2 n.1.)

2

Revenue Service ('IRS')." (¶ 14.) "Aspects of [Armor] are confidential and proprietary and are not known outside of [Plaintiff]." (¶ 15.) Plaintiff licenses Armor for use by third parties, but only under licensing and user agreements that prohibit disclosure of confidential information or attempts to reverse-engineer or otherwise copy Armor. (¶ 17.)

NCI became an Armor licensee in January 2018. (¶ 19.) Ferry, NCI's president, "executed the Licensing Agreement on behalf of [NCI]." (¶¶ 4, 20.) Apparently this Licensing Agreement was executed electronically: "By clicking the accept button on the Licensing Agreement, [NCI], through [Ferry], agreed to abide by all terms and conditions of the Licensing Agreement." (¶ 35.)

A little over a year later (February 2019), "[NCI] engaged Leigh Database Design ['Leigh'] to develop a Microsoft Access Database" for NCI. (¶ 40.) Reynoso, NCI's director of operations, made several screenshots of Armor that were included in e-mails to Lee, along with links to various Armor pages. (¶¶ 6, 41–44.) Those links would not have been accessible without an Armor username and password, but Armor's terms of service prohibit sharing usernames and passwords. (¶¶ 37, 45.)

Leigh "partially developed" the database "before terminating its engagement on or about May 16, 2019." (¶ 48.) The database contains "a nearly verbatim reproduction" of a confidential and proprietary portion of Armor known as the "Task Library." (¶¶ 49, 53.) Plaintiff believes that NCI "has engaged additional software developers to assist in creating a platform derivative of [Armor]." (¶ 50.)

### III. ANALYSIS

Plaintiff has sued Defendants variously for breach of contract, misappropriation

3

of trade secrets, conversion, civil conspiracy, and unjust enrichment. (ECF No. 14 at 12–23.) Defendants' motion challenges the conversion and civil conspiracy claims only. Plaintiff, in its response, "stipulates to the dismissal of its conversion claims." (ECF No. 33 at 1.) On that basis, Defendants' motion is granted as to Plaintiffs' Claims 9 and 10 (¶¶ 149–64), and the Court will focus on the civil conspiracy claim (Claim 11), which is alleged against Ferry and Reynoso only (¶¶ 165–75).

Under Colorado law, civil conspiracy "is a derivative cause of action that is not actionable per se." *Double Oak Const., L.L.C. v. Cornerstone Dev. Intern., L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003). In other words, civil conspiracy is not a traditional cause of action, but "is a means for establishing vicarious liability for [an] underlying [wrong]." *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983). "If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Double Oak*, 97 P.3d at 146; *see also Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995) ("[C]onspiracy must involve an unlawful act or unlawful means . . . [and] a party may not be held liable for doing in a proper manner that which it had a lawful right to do."). The elements of civil conspiracy are: (1) two or more persons, (2) an object to be accomplished, (3) an agreement on the object or course of action, (4) one or more unlawful overt acts, and (5) damages proximately caused by the unlawful overt act(s). *Jet Courier Serv. Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989).

"A corporation and its employees do not constitute the 'two or more persons' required for a civil conspiracy, at least if the employees are acting on behalf of the corporation and not as individuals for their individual advantage." *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1390 (Colo. App. 1986) (citations omitted). Based on this

4

principle, Defendants allege that Ferry and Reynoso cannot be liable for civil conspiracy because they were acting for NCI.  (ECF No. 31 at 4–6.)  Defendants acknowledge Plaintiff's allegation that "Defendants Ferry and Reynoso's conduct, as described above, was taken for their individual advantage" (¶ 171), but Defendants argue that this statement is conclusory and therefore does not plausibly plead an actionable conspiracy (ECF No. 31 at 5–6).

Plaintiff responds that the allegation of individual advantage "*must* be taken as true" at the Rule 12(b)(6) phase, and that Plaintiff has otherwise enumerated "a number of other actions by Defendants Ferry and Reynoso that support the allegation [that] they were acting for their own advantage."  (ECF No. 33 at 4 (emphasis in original).)  As to the latter assertion, the only example Plaintiff cites is ¶ 168 of the Complaint, which reads, "To accomplish this goal [*i.e.*, misappropriate trade secrets and breach contracts], Defendants Ferry and Reynoso disclosed confidential information, unlawfully shared information regarding [Armor], granted third parties unauthorized access to [Armor], and engaged third parties to reverse engineer and create derivative work of [Armor]."

The Court agrees with Defendants that Plaintiff has not plausibly pleaded a civil conspiracy between Ferry and Reynoso.  To understand why, the Court first notes that Plaintiff, in the Complaint, refers to NCI as "National Tax" (a shortened version of NCI's d/b/a name).  Keeping that in mind, the Court reiterates some of the allegations summarized above, alongside certain others (all emphasis added):

- "On or about January 24, 2018[,] *National Tax* entered into the Titan Armor® Licensing Agreement, (the 'Licensing Agreement'). . . . Defendant

5

> Ferry executed the Licensing Agreement *on behalf of National Tax*. * * * By executing the Licensing Agreement, Defendant Ferry represented that he had the *authority to bind National Tax* to the Licensing Agreement. * * * By clicking the accept button on the Licensing Agreement, *National Tax, through Defendant Lee Ferry*, agreed to abide by all terms and conditions of the Licensing Agreement." (¶¶ 19–20, 22, 35.)

- "In or about February 2019, *National Tax* engaged Leigh Database Design to develop a Microsoft Access Database (the 'National Tax Database') for use with *National Tax's* R&D Tax Credit work." (¶ 40.)

- "*National Tax* subsequently sent a series of at least five (5) Microsoft Word documents to Leigh Database Design by email with instructions for developing the National Tax Database. Those five (5) Microsoft Word documents included screenshots of [Armor]. Upon information and belief, Defendant Reynoso took the screenshots of [Armor]." (¶¶ 41–43.)

- "Upon information and belief, Defendants Ferry and Reynoso, along with Grace Dolen, *National Tax's* Administrative Coordinator [who is not a party here], each participated in furnishing information to Leigh Database Design to assist in preparing the National Tax Database." (¶ 47.)

- "Upon information and belief, *National Tax* has engaged additional software developers to assist in creating a platform derivative of [Armor], including developers outside of the United States." (¶ 50.)

These are the only allegations describing Ferry's or Reynoso's personal participation, and all of them point toward Ferry and Reynoso taking action on behalf of

6

NCI ("National Tax").  The allegation—many pages later—that their conduct "was taken for their individual advantage" (¶ 171) comes out of nowhere, and is manifestly an attempt to invoke the exception to the *Pittman* rule against intracorporate conspiracies. Without supporting allegations, however, Defendants are correct, in these circumstances, that ¶ 171 is a purely conclusory allegation entitled to no consideration. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts need not consider "labels and conclusions or a formulaic recitation of the elements of a cause of action" when evaluating whether a plaintiff has plausibly pleaded a claim (internal quotation marks omitted)).

In light of the rule that corporate employees acting on the corporation's behalf cannot create a civil conspiracy, Plaintiff's civil conspiracy claim must be dismissed. Because the Court cannot say with certainty that Plaintiff could never allege a plausible civil conspiracy, this dismissal is without prejudice.[2]

### IV.  CONCLUSION

For the reasons set forth above, Defendants' Partial Motion to Dismiss is GRANTED with prejudice as to Plaintiff's Claims 9 and 10 (for conversion), and GRANTED without prejudice as to Plaintiff's Claim 11 (for civil conspiracy).

---

[2] Plaintiff, in its response brief, "requests leave to amend to provide additional grounds for this allegation."  (ECF No. 33 at 4.)  "A motion shall not be included in a response or reply to the original motion."  D.C.COLO.LCivR 7.1(d).  "All requests for the Court to take any action, make any type of ruling, or provide any type of relief must be contained in a **separate**, written motion."  WJM Revised Practice Standard III.B (emphasis in original).  This request is accordingly denied.  The Court expresses no opinion on the viability of any motion to amend that Plaintiff might bring.

Dated this 2nd day of March, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge