**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-1749-WJM-SKC

TITAN MANUFACTURING SOLUTIONS, INC., a Nevada corporation,

     Plaintiff/Counterclaim Defendant,

v.

NATIONAL COST, INC., a Florida corporation d/b/a National Tax Group,

     Defendant/Counterclaimant.

---

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

---

     Plaintiff Titan Manufacturing Solutions, Inc. ("Titan") sues Defendant National Cost, Inc., d/b/a National Tax Group ("National Tax") for breach of contract and trade secret misappropriation.  (ECF No. 14.)  National Tax counterclaims for fraud in the inducement, tortious interference with prospective business advantage, tortious interference with contract, and unjust enrichment.  (ECF No. 73.)  National Tax has also filed (without leave) amended counterclaims, inserting a claim for trade secret misappropriation.  (ECF No. 86 at 9.)[1]

     Currently before the Court is National Tax's Motion for Preliminary Injunction (ECF No. 87), seeking to prevent Titan from taking advantage of trade secrets allegedly made available to Titan by a former National Tax employee.  As explained below, the Court finds that, just as with Titan's previous requests for a preliminary injunction (*see*

---

[1] In light of the outcome below, the Court need not decide whether the amended counterclaims should be treated as the currently operative counterclaims pleading.

ECF Nos. 32, 56), National Tax's motion fails on its face to satisfy the irreparable harm element.  Accordingly, no evidentiary hearing is needed and the motion will be denied.

## I. BACKGROUND

The Court has recounted Titan's allegations elsewhere.  (*See* ECF No. 56 at 2–4; ECF No. 74 at 2–3.)  For present purposes, it suffices to note that Titan develops and licenses a web-based system, "Titan Armor," for tracking and calculating the research and development ("R&D") tax credit available under 26 U.S.C. § 41.  National Cost is a tax consulting business that previously licensed Titan Armor, but has since attempted to develop an in-house alternative, allegedly in violation of licensing and other agreements with Titan.

In its amended counterclaims, National Cost tells a different story:

> While the parties were working together in 2018, Titan recognized that its own business model was inferior to that of National Tax.  Titan was merely providing a software product; National Tax was providing valuable consulting services that incorporated the software product. Understanding the revenue potential of the National Tax model [*i.e.*, of providing services through human consultants backed by software, not just providing software], Titan attempted to strong-arm National Tax into paying it a much larger share of its revenue to Titan.  When that did not work, Titan began a campaign of soliciting National Tax employees to breach their confidentiality and non-compete agreements to obtain National Tax's customers and prospects.  This latter campaign has now been successful, causing at least one employee to breach his obligations to National Tax and thereby to divert hundreds of thousands of dollars of revenue to Titan.

(ECF No. 86 ¶ 1.)

The "one employee" is Mr. Alex Lubell.  (*Id.* ¶ 26.)  The diverted revenue is "a $400,000.00 deal that Titan will benefit from, rather than National Tax even though Mr. Lubell worked on this deal while National Tax's employee.  In short, Mr. Lubell took

this confidential customer/prospect from National Tax to Titan." (*Id.* ¶ 29.)  National Tax

does not provide any further detail about this deal.  It alleges, however, that Mr. Lubell

also introduced Titan to two architecture firms that were "prospective National Tax

customers."  (ECF No. 87 at 6; *cf.* ECF No. 86 ¶ 50.)  National Tax asks the Court to

enjoin Titan "from using National Tax's confidential customer lists and customer

acquisition strategies obtained from National Tax's former employee in violation of his

Confidentiality Agreement."  (ECF No. 87 at 1; *see also* ECF No. 96 at 1.)[2]

Titan counters that National Tax employees reached out to Titan, not the other

way around, largely due to dissatisfaction with National Tax's alleged theft of Titan's

trade secrets.  (ECF No. 93 at 2.)  "[A]round the same time," Mr. Lubell reached out to

Titan "to discuss a possible advisor contract."  (*Id.*)  Titan says it "had no knowledge of

Mr. Lubell's identity, role, or connection to [National Tax]."  (*Id.*)  Mr. Lubell now works

as "an independent contractor/advisor for Titan (among other businesses) . . . where he

generates potential leads."  (*Id.* at 2–3.)

As for the architecture firms, Titan says that one of them was "a homegrown

prospect client of Titan that has never worked with [National Tax]," and the other,

although brought to Titan by Mr. Lubell, "resulted in no additional work and stemmed

from publicly available information."  (*Id.* at 6–7.)  Finally, Titan says it "has no

knowledge of the alleged $400,000.00 client and deal."  (*Id.* at 7.)

## II.  LEGAL STANDARD

A preliminary injunction is an extraordinary remedy; accordingly, the right to relief

---

[2] Mr. Lubell is not a defendant here.  Titan says that National Tax is suing him in Florida. (ECF No. 93 at 10 n.7.)

must be clear and unequivocal.  *See, e.g., Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010).  A movant must show: (1) a likelihood of success on the merits, (2) a threat of irreparable harm, which (3) outweighs any harm to the non-moving party, and (4) that the injunction would not adversely affect the public interest. *See, e.g.*, *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012).

### III.  ANALYSIS

Among the preliminary injunction elements, "a showing of probable irreparable harm is the single most important prerequisite." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks omitted) ("*Dominion Video II*").  "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) ("*Dominion Video I*"). When trade secrets, confidentiality agreements, and similar matters are at issue, the following factors may be helpful to consider when deciding whether a monetary remedy would be effective: "inability to calculate damages, harm to goodwill, diminishment of competitive positions in [the] marketplace, loss of employees' unique services, the impact of state law, and lost opportunities to distribute unique products." *Dominion Video II*, 356 F.3d at 1263.  Finally, whatever else the irreparable harm may be, it "must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).

National Tax's first irreparable harm argument is as follows:

> Titan is harming National Tax's good will by asserting that it
> can provide comparable consulting services.  But, Titan

> cannot.  For example, Titan has previously indicated that its software was not capable of withstanding audit scrutiny. Using its software and new and unknown consulting services and comparing those to National Tax's services harms National Tax.  The customer is being sold an inferior product while being told the product is akin to that of National Tax. National Tax's good will and competitive position in the marketplace are therefore harmed.

(ECF No. 87 at 12 (citation omitted).)  Although National Tax manages to weave in irreparable harm catchphrases ("good will," "competitive position"), the argument makes little sense.  National Tax is saying, in essence:

- Titan will compete for National Tax's prospective customers by telling them, "Our services are as good as National Tax's."

- Some customers will believe Titan's representation and retain Titan instead of National Tax.

- These customers will eventually find out that Titan's representation was untrue.

- *Ergo*, these customers will form a bad opinion of *National Tax's services*.

The conclusion simply does not follow from the premises.  The argument therefore fails to raise any possibility of irreparable harm.

National Tax's second (and last) irreparable harm argument is as follows:

> National Tax will continue to be harmed due to the loss of future incalculable revenue.  Indeed, due to the nature of tax consulting services, customers retain the same consultant for a number of years.  The future revenue from these years is impossible to calculate because of the nature of the customer's work and needs often change.

In support of the final sentence, National Tax cites the declaration of its president, Lee Ferry, who says, without elaboration, that "future sales . . . are not quantifiable because

each customer's needs constantly change." (ECF No. 87-1 ¶ 10.)

On this, the Court agrees with Titan that, assuming Titan is found liable, National Tax's "harm is calculable through a disclosure of profits actually received by Titan" from those prospective clients that Titan would not have obtained but for its wrongful actions. (ECF No. 93 at 14.) And if National Tax believes it would have earned more from those customers for the same work that Titan did, it is welcome to attempt to prove as much.

To be sure, this may require a prospective order at the end of the case (not just a judgment awarding retrospective damages) to capture wrongfully obtained engagements, if any, that last beyond final judgment. National Tax could also seek a permanent injunction at that point. In any event, National Tax's vague assertion that "future sales . . . are not quantifiable because each customer's needs constantly change" (ECF No. 87-1 ¶ 10) does not raise even a *prima facie* possibility that "the court would be unable to grant an effective monetary remedy after a full trial." *Dominion Video I*, 269 F.3d at 1156.

Accordingly, National Tax fails to show a likelihood of irreparable harm, and the Court need not analyze the remaining elements of the preliminary injunction test.

## IV. CONCLUSION

For the reasons set forth above, National Tax's Motion for Preliminary Injunction (ECF No. 87) is DENIED.

Dated this 16th day of April, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge