**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-1749-WJM-SKC

TITAN MANUFACTURING SOLUTIONS, INC.,

    Plaintiff/Counterclaim Defendant,

v.

NATIONAL COST, INC., D/B/A NATIONAL TAX GROUP,

    Defendant/Counterclaim Plaintiff.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF TITAN
MANUFACTURING SOLUTIONS, INC.'S MOTION TO DISMISS COUNTERCLAIMS
OF NATIONAL COST, INC. D/B/A NATIONAL TAX GROUP
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

    This business dispute concerning tax credit software is before the Court on Plaintiff/Counterclaim Defendant Titan Manufacturing Solutions, Inc.'s ("Titan") Motion to Dismiss Counterclaims of National Cost, Inc. d/b/a National Tax Group ("National Tax") Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss").  (ECF No. 91.) Defendant/Counterclaim Plaintiff National Tax filed a response in opposition (ECF No. 102), to which Plaintiff replied (ECF No. 106).  For the following reasons, the Motion to Dismiss is granted in part and denied in part.

## I. OPERATIVE PLEADING

    National Tax has filed two sets of counterclaims: Counterclaims (ECF No. 73) and Amended Counterclaims (ECF No. 86).  As an initial matter, the Court must address which set of counterclaims is the operative pleading for purposes of the Motion to Dismiss.

1

In its Order Denying Motion for Preliminary Injunction, the Court acknowledged that "National Tax has also filed (without leave) amended counterclaims, inserting a claim for trade secret misappropriation." (ECF No. 99 at 1.)  At that time, the Court determined that it "need not decide whether the amended counterclaims should be treated as the currently operative counterclaims pleading." (*Id.* at 1 n.1.)  Now, before proceeding any further, the Court must decide this issue.

Federal Rule of Civil Procedure 15(a) provides for amendment of pleadings before trial:

> (1) Amending as a Matter of Course.  A party may amend its pleading once as a matter of course within:
>
>> (A) 21 days after serving it, or
>>
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

On February 26, 2020, National Tax filed its Counterclaims, alleging fraud in the inducement, interference with prospective business advantage, interference with contract, and unjust enrichment.  (ECF No. 73.)  Twenty-three days later, on March 20, 2020, without seeking leave of Court, National Tax filed its Amended Counterclaims, alleging the above-referenced claims and adding a claim for misappropriation of trade secrets.  (ECF No. 86.)  Rather than filing a responsive pleading, Titan filed the Motion to Dismiss on April 3, 2020.  (ECF No. 91.)

National Tax argues that its Amended Counterclaims were timely filed under Rule 15(a)(1)(B), stating vaguely that the "time ha[d] not yet run." (ECF No. 102 at 1 n.1.) But National Tax is incorrect. As Titan argues (ECF No. 106 n.1), National Tax filed its Counterclaims on February 26, 2020. (ECF No. 73.) Titan did not file a responsive pleading, instead filing the Motion to Dismiss on April 3, 2020. (ECF No. 91.) Under Rule 15, to amend its Counterclaims without the Court's permission, National Tax was required to file its Amended Counterclaims either between February 26, 2020 and March 18, 2020 (which would have been 21 days after service) or between April 3, 2020 and April 24, 2020 (which would have been 21 days after service of a motion under Rule 12(b)). It did neither, instead filing the Amended Counterclaims on March 20, 2020. (ECF No. 86.)

As the Amended Counterclaims were improperly filed under Rule 15, the Court strikes them. *See Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) ("In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend."). Therefore, the operative pleading for purposes of the Motion to Dismiss is National Tax's Counterclaims (ECF No. 73).[1]

## II. BACKGROUND[2]

The following factual summary is drawn from National Tax's Counterclaims (ECF No. 73), except where otherwise stated. The Court assumes the allegations in the Counterclaims are true for the purposes of deciding the Motion to Dismiss. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

---

[1] As a practical matter, this determination only affects National Tax's counterclaim for misappropriation of trade secrets.

[2] The Court has diversity jurisdiction in this case under 28 U.S.C. § 1332. (ECF No. 73 ¶ 4.)

The Court has recounted Titan's allegations (ECF No. 14) in prior orders. (*See* ECF No. 56 at 2–4; ECF No. 74 at 2–3; ECF No. 99 at 2.) For present purposes, it suffices to note that Titan develops and licenses a web-based system, "Titan Armor," for tracking and calculating the research and development ("R&D") tax credit available under 26 U.S.C. § 41. National Cost is a tax consulting business that previously licensed Titan Armor, but has since attempted to develop an in-house alternative, allegedly in violation of licensing and other agreements with Titan.

In its Counterclaims, National Tax tells a different story:

> While the parties were working together in 2018, Titan recognized that its own business model was inferior to that of National Tax. Titan was merely providing a software product; National Tax was providing valuable consulting services that incorporated the software product. Understanding the revenue potential of the National Tax model, Titan attempted to strong-arm National Tax into paying it a much larger share of its revenue to Titan. When that did not work, Titan began a campaign of soliciting National Tax employees to breach their confidentiality and non-compete agreements to obtain National Tax's customers and prospects. This latter campaign has now been successful, causing at least one employee to breach his obligations to National Tax and thereby to divert hundreds of thousands of dollars of revenue to Titan.

(ECF No. 73 ¶ 1.)

National Tax alleges that "[a]s part of the basis to use Titan's software, in winter 2018, Brian Lefever of Titan represented that use of the software would provide audit-defense for calculations made within the software." (*Id.* ¶ 16.) Further, Titan allegedly represented that "[n]ot only would the software provide audit support, but Titan represented that it would stand behind the use of its software and provide assistance to any client who used the software should the IRS conduct an audit." (*Id.*) National Cost alleges that this audit defense representation was "false," and that "Titan has made it

4

clear that use of its software by National Tax will not support an audit defense nor will it provide any audit defense, in direct violation of the very representation that caused National Tax to enter the relationship." (*Id.* ¶ 17.) Thus, "[b]y falsely representing that using its software would provide audit defense when that, in fact, is not true, Titan has exposed National Tax to exposure for all client work done for which there would have been audit protection." (*Id.* ¶ 18.)

In addition, National Tax alleges that as a result of the parties' relationship, Titan gained "preferred access to National Tax's customers and employees." (*Id.* ¶ 14.) At least once, "Titan communicated with a National Tax customer, interfering with all future opportunities between [them]." (*Id.* ¶ 20.) In early 2019, a National Tax customer, Saltz Michelson, contacted Titan to discuss future business, and based on that conversation, Saltz Michelson ceased doing business with National Tax, "even though National Tax had performed the consulting services for Saltz Michelson in 2018 and the learning from 2018 would have been valuable to Saltz Michelson in 2019." (*Id.*) "As a result of Titan's actions, National Tax lost approximately $30,000.00 in anticipated revenue from Saltz Michelson in 2019 alone." (*Id.*)

National Tax alleges that Titan also interfered with its contracts with its employees. Although Titan was allegedly aware that National Tax and its employees and independent contractors had entered into confidentiality and non-compete agreements, Titan nonetheless allegedly solicited National Tax employees to leave National Tax and join Titan to form a competing business. (*Id.* ¶¶ 23–24.) In particular, Titan allegedly successfully induced National Tax's employee Alex Lubell to breach his non-compete agreement and work for Titan. (*Id.* ¶ 25.) Through its relationship with

5

Lubell, Titan has allegedly gained access to and used National Tax's confidential customer information to obtain new customers who would have otherwise hired National Tax. (*Id.* ¶ 26.) Lubell allegedly helped Titan close a $400,000 deal, which Lubell had originally worked on as National Tax's employee, thus benefitting Titan at National Tax's expense. (*Id.* ¶ 28.)

Finally, National Tax also alleges that Titan has been unjustly enriched at its expense, and that it would "be unfair to allow Titan to profit and benefit from their wrongdoing, and to retain the economic benefit derived from their conduct, including the fees National Tax paid to Titan and the monies earned from customers that would have otherwise worked with National Tax." (*Id.* ¶¶ 50–51.)

Based on these allegations, National Tax alleges four counterclaims against Titan, including: (1) fraud in the inducement, (2) interference with prospective business advantage, (3) interference with contract, and (4) unjust enrichment. Titan moves to dismiss all of the counterclaims under Federal Rule of Civil Procedure 12(b)(6).[3] (ECF No. 91.)

---

[3] The Court notes that Titan has attached three documents to the Motion to Dismiss: (1) the License Agreement between Titan and National Tax (ECF No. 91-1); (2) what Titan refers to as the Service Contract between Titan and National Tax (ECF No. 91-2); and (3) Alex Lubell's Non-Competition, Confidentiality, and Non-Disclosure Agreement ("Lubell Agreement") (ECF No. 91-3). National Tax does not dispute the propriety of the Court considering these documents. (*See generally* ECF No. 102.) Regardless, a court has discretion to consider documents attached to a Rule 12(b)(6) motion to dismiss if the documents are referenced in a complaint, are central to a plaintiff's claims, and are indisputably authentic. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) ("GFF Corp. did not purport to decide whether consideration of materials appended to a motion to dismiss is mandatory or discretionary . . . We agree with our sister circuits that . . . the court has discretion to consider such materials.").

### III. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk*, 493 F.3d at 1177. Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

"[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## IV. ANALYSIS

### A.    Fraud in the Inducement

Under *Iqbal*'s plausibility standard, National Tax must plead facts that create a reasonable inference of a claim of fraudulent inducement under Colorado law. *See Granite Southlands Town Ctr., LLC v. Provost*, 445 F. App'x 72, 75 (10th Cir. 2011) (citing *Haberman v. Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006) ("In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims.")). The elements of fraudulent inducement are: (1) the defendant made a fraudulent misrepresentation of fact or knowingly failed to disclose a fact that defendant had a duty to disclose; (2) the fact was material; (3) the plaintiff relied on the misrepresentation or failure to disclose; (4) the plaintiff's reliance was justified; and (5) the reliance resulted in damage to the plaintiff. *Id.* (citations omitted).

Titan argues that National Tax's fraudulent inducement claim fails as a matter of law under the economic loss doctrine. (ECF No. 91 at 4–7.) The Court need not address this argument because it finds that National Tax has failed to sufficiently allege the fifth element: that its reliance on the alleged misrepresentation resulted in damage to it. There are only two allegations in the Counterclaims that could even conceivably be considered an attempt to allege damage resulting from fraudulent inducement:

> By falsely representing that using its software would provide audit defense when that, in fact, is not true, Titan has exposed National Tax to exposure for all client work done for which there would have been audit protection.

> . . .
>
> Audit risk is one of the largest areas of exposure for companies in the R&D tax credit business. By falsely representing that it provided audit defense, Titan has exposed National Tax to exposure for all client work done for which there would have been audit protection.

(*Id.* ¶¶ 18, 34.)

However, these allegations do not set forth any facts suggesting Titan's alleged misrepresentations have damaged National Tax at all. To the contrary, the allegations merely speculate that National Tax might in the future be "exposed" in some way based on the alleged misrepresentation that Titan would provide audit defense for its software's calculations. Even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Court finds these allegations fail to sufficiently allege the required element of damage under Colorado law.

Thus, the fraudulent inducement counterclaim will be dismissed without prejudice.[4]

**B.      Interference with Prospective Business Advantage**

"To state a claim for intentional interference with contractual relations or prospective business advantage, a plaintiff must allege facts in support of the following elements: (1) the existence of a valid contract or reasonable prospect of having a business relationship; (2) that the defendant knew of the contract or prospective relationship; (3) the defendant intended to induce a breach of the contract or interfere with the prospective business relationship; (4) defendants engaged in conduct which

---

[4] The Court also notes that the fraudulent inducement claim fails to comply with Federal Rule of Civil Procedure 9(b)'s particularity requirement for fraud claims. However, the Court need not analyze this pleading deficiency, having dismissed the claim on other grounds.

9

produced a breach of contract or prevented the plaintiff from acquiring or continuing a prospective business relationship; (5) the interference was improper; and (6) the plaintiff suffered damages." *Zimmer Spine, Inc. v. EBI, LLC*, 2011 WL 4089535, at *2 (D. Colo. Sept. 14, 2011) (citing *Memorial Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210 (Colo.1984); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995)).

"Interference with contractual relations and interference with prospective business relations requires identical elements, with the exception that an existing contract need not be alleged for interference with prospective business relations." *Id.* Rather, a plaintiff "must show that there was a reasonable likelihood that a contract would have resulted but for the wrongful interference." *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1122 (10th Cir. 2008) (quoting *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995)). "However, a protected relationship exists only if there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope." *Klein*, 44 F.3d at 1506.

National Tax alleges that Titan's interactions with Saltz Michelson, National Tax's customer in 2018, constitute interference with prospective business advantage. (ECF No. 73 ¶¶ 19–20, 36–42.) However, as Titan points out, National Tax has failed to allege anything "beyond a mere hope" that Saltz Michelson would have engaged National Tax's services after 2018. All National Tax has alleged is that following a conversation with Titan, "Saltz Michelson ceased doing business with National Tax, even though National Tax had performed the consulting services for Saltz Michelson in 2018 and the learning from 2018 would have been valuable to Saltz Michelson in 2019."

(*Id.* ¶ 20.)  As Titan argues, nothing in these allegations indicates that Saltz Michelson had engaged or communicated with National Tax in 2019, or that Saltz Michelson and National Tax had ever discussed continuing their relationship.  Additionally, there is no allegation of a long-term relationship from which the Court might infer that Titan's communication with Saltz Michelson interfered with prospective business.  To the contrary, Saltz Michelson and National Tax allegedly only did business in 2018.  Such bare allegations do not pass muster.

Thus, the interference with prospective business advantage counterclaim will also be dismissed without prejudice.[5]

## C.     Interference with Contract

The Court has already set forth the elements for tortious interference with contract.  *See supra* Part IV.B.

The Court finds that National Tax has sufficiently alleged that Titan interfered with its contract with Alex Lubell.  Specifically, National Tax has alleged that to protect its confidential business information, it enters into confidentiality and non-compete agreements with its employees and independent contractors.  (ECF No. 73 ¶ 44.)  In interacting with National Tax's employees, Titan allegedly became aware of these agreements.  (*Id.* ¶ 45.)  National Tax alleges that Titan solicited Lubell to breach his

---

[5] To the extent that National Tax asks the Court to consider under Federal Rule of Civil Procedure 10(c) other prospective customers, including GTM Architects and Jones Pierce Architects, who are not alleged in the Counterclaims but whose names appear in National Tax's preliminary injunction briefing (ECF No. 102 at 9), the Court declines to do so.
    Rule 10(c) provides: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  As Titan states, this rule allows motions and pleadings to adopt allegations from pleadings; it does not, however, allow pleadings to incorporate allegations from motions.  (ECF No. 106 at 6 n.6.)  As there are no allegations related to GTM or Jones Pierce in the Counterclaims, the Court will not consider them in this Order.

11

non-compete agreement to gain access to and/or have Lubell use National Tax's confidential customer data. (*Id.* ¶ 46.) As a result of its solicitation of Lubell, Titan allegedly has "usurped business opportunities from National Tax," and specifically, "Titan's conduct has caused National Tax[6] to benefit from a recent $400,000.00 deal with a customer that Mr. Lubell prospected while at National Tax." (*Id.* ¶ 47.) "But for Titan's actions, this customer would have entered into a contract with National Tax instead of Titan." (*Id.*)

Titan argues that, despite these allegations, the Lubell Agreement is unenforceable as a matter of law under Florida law and is therefore null and void.[7] (ECF No. 91 at 13–14.) Specifically, Titan contends that the contractual provision restricting Lubell from competing with National Tax and/or soliciting its customers in any territory within a 200-mile radius of the territory(s) in which National Tax conducted business within the twelve-month period preceding the date of Lubell's termination is unenforceable and void as a matter of Florida law. (*Id.* at 14.)

In response, National Tax cites authority supporting the proposition that whether a non-compete covenant is reasonable or overly broad is a question of fact for the trial court to decide. (ECF No. 102 at 13 n.5 (citing *Orkin Exterminating Co. v. Girardeau*, 301 So. 2d 38, 40 (Fla. Dist. Ct. App. 1974) ("What is a reasonable area is a factual matter to be determined in each case.").) The Court agrees that the enforceability of Lubell's non-compete agreement is factual matter which cannot be resolved in the context of a Rule 12(b)(6) motion.

---

[6] The Court presumes this is a typographical error and that Titan, not National Tax, benefitted from this deal.

[7] Florida law governs the Lubell Agreement, and neither party disputes as much. (*See* ECF No. 91-3 at 6 ¶ 10.)

Therefore, Titan's motion to dismiss National Tax's interference with contract counterclaim is denied.

**D.     Unjust Enrichment**

"Unjust enrichment is a claim in quasi-contract based on principles of restitution." *Pernick v. Computershare Tr. Co., Inc.*, 136 F. Supp. 3d 1247, 1268 (D. Colo. 2015) (quoting *W. Ridge Grp., LLC v. First Tr. Co. of Onaga*, 414 F. App'x 112, 120 (10th Cir. 2011) (applying Colorado law)). "In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Id.* (quoting *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003)).

Colorado courts recognize two exceptions to this general rule. "First, a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract." *Id.* "Second, a party can recover on a quasi-contract when the party will have no right under an enforceable contract," such as "when an express contract failed or was rescinded." *Id.* (citations and quotations omitted).

National Tax's unjust enrichment counterclaim seeks restitution for the "economic benefit derived from [Titan's] conduct, including the fees National Tax paid to Titan and the monies earned from customers that would have otherwise worked with National Tax." (ECF No. 73 ¶ 51.)

Titan contends that the unjust enrichment counterclaim fails due to the existence of a binding licensing agreement between the parties covering the substance of the

13

allegations. (ECF No. 91 at 15.) As National Tax's claim for fees and monies owed is grounded in the parties' express contractual relationship, Titan argues that National Tax's quasi-contract counterclaim should be dismissed as a matter of law. (*Id.*)

In response, National Tax argues that Titan's argument inaccurately characterizes the counterclaim. (ECF No. 102 at 15.) Instead, National Tax argues that the unjust enrichment counterclaim arises out of Titan's tortious and fraudulent conduct—including fraudulently inducing National Tax to enter a relationship, and inducing a former employee to breach his contract for Titan's benefit—not the parties' contract. (*Id.*) National Tax contends the Licensing Agreement "relates to software usage and has nothing to do with information that National Tax never provided to Titan or the statements made prior to its alleged execution." (*Id.*)

Despite National Tax's arguments, the Court agrees with Titan and will dismiss the unjust enrichment claim for the following reasons. Any allegation regarding fees National Tax paid to Titan arises out of the Licensing Agreement and is thus barred, as the express contract precludes any implied-in-law contract. *Pernick*, 136 F. Supp. 3d at 1268. Moreover, to the extent National Tax alleges Titan owes it any "monies earned from customers that would have otherwise worked with National Tax," the Court has previously determined that National Tax has failed to state a claim for interference with a prospective business advantage, precluding a claim of unjust enrichment on that basis.

Therefore, National Tax's unjust enrichment claim will be dismissed without prejudice.

14

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. National Tax's Amended Counterclaims (ECF No. 86) are STRICKEN;

2. Plaintiff/Counterclaim Defendant Titan Manufacturing Solutions, Inc.'s Motion to Dismiss Counterclaims of National Cost, Inc. d/b/a National Tax Group Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 91) is GRANTED in part and DENIED;

    a. The Motion to Dismiss is GRANTED insofar as National Tax's counterclaims for fraud in the inducement; interference with prospective business advantage; and unjust enrichment are DISMISSED without prejudice; and

    b. The Motion to Dismiss is otherwise DENIED.

Dated this 29th day of January, 2021.

BY THE COURT:

William J. Martinez
United States District Judge